## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | No. 13-cr-28-JED-32 |
| ) | (Related: 16-cv-515-JED-JFJ) |
| DON WALKER, ) | |
| ) | |
| **Defendant.** ) | |

## **OPINION AND ORDER**

**I.  Background**

On September 11, 2015, Don Walker ("Walker") pleaded guilty to one count of drug conspiracy, pursuant to 21 U.S.C. §§ 846 and 841(b)(1)(B)(vii). (Doc. 1334, 1335). This Court accepted Mr. Walker's plea and sentenced him to eighty-five (85) months of imprisonment and four years of supervised release. (Doc. 1583 at 2-3). The judgment was entered on December 17, 2015.

On August 5, 2016, Walker filed a timely *pro se* motion under 28 U.S.C. § 2255 in which he challenges his judgment of conviction based on grounds of ineffective assistance of counsel and actual innocence. (Doc. 2016, 2017). Walker's arguments in this motion and brief in support regarding ineffective assistance of counsel can be divided into roughly three categories. First, Walker alleges that his counsel was ineffective in regard to discovery—that he failed to obtain and provide to Walker certain phone records (Doc. 2017 at 2). He also alleges that his counsel "allowed [him] to enter into a plea based on no actual evidence presumably or otherwise," (Doc. 2017 at 2), and that his counsel failed to "hold[] the government to adversarial testing concerning the evidence it presumed to have against me." (Doc. 2016 at 5). Lastly, he appears to allege that his counsel was ineffective in connection to his sentencing. He asserts that his counsel "fail[ed]

1

to research the admission of no possible evidence against Mr. Walker as mentioned in the PSR." (Doc. 2017 at 4).

Walker filed an Addendum (Doc. 2044) ("First Addendum") to his motion on September 6, 2016. Because this First Addendum was filed with the one-year period of limitation set by § 2255(f), the Court will consider it as an amendment to his original motion. In the First Addendum, Walker argues that he should have received a § 3B1.2 "minor role" sentencing reduction based on the list of factors added by Amendment 794, effective November 1, 2015. (Doc. 2044).

Walker filed a second Addendum ("Second Addendum") on June 7, 2017—outside of the one-year period of limitation. (Doc. 2227). In the Second Addendum, Walker again argues that he "is actually innocent of the crime." (Doc. 2227 at 3 of 8). He also contends that his counsel "erroneously advocated a waiver of Fifth Amendment privilege" based on a recorded phone call that, he argues, "indicated nothing about [his] intent to buy, sell, or deliver narcotics" and did not identify him as a participant in the call. (*Id*.). He asserts that his counsel was ineffective for not "challeng[ing] the validity of the wiretap authorization nor the admissibility of the recorded call" and for not "mov[ing] for suppression of the evidence." (*Id*. at 4 of 8). Walker also asserts that he was told by his counsel that he would be pleading to "nominal amounts of narcotics," and that his guilty plea was therefore "unintelligent, unknowing, and involuntary." (*Id*.). Lastly, Walker alleges prosecutorial misconduct based on the government's failure to view co-defendants' statements about him "with skepticism." (Doc. 2227 at 5 of 8).

In *United States v. Espinoza-Saenz*, the Tenth Circuit held that "an untimely amendment to a § 2255 motion 'which, by way of additional facts, clarifies or amplifies a claim or theory in the [original motion] may, in the District Court's discretion, relate back to the date of [the original motion] if and only if the [original motion] was timely filed and the proposed amendment does not

seek to add a new claim or to insert a new theory into the case.'" 235 F.3d 501, 505 (10th Cir. 2000) (alterations in original) (quoting *United States v. Thomas*, 221 F.3d 430, 431 (3rd Cir. 2000)).

In an Eleventh Circuit case cited favorably by the Tenth Circuit in *Espinoza-Saenz*, the petitioner filed a timely § 2255 motion that raised three claims concerning alleged errors in his trial and sentencing and a claim alleging that his counsel was ineffective for failing to raise those three issues. *Davenport v. United States*, 217 F.3d 1341, 1342-43 (11th Cir. 2000); *see also Espinoza-Saenz*, 235 F.3d at 504. The petitioner later filed an amended § 2255 motion—this time outside of the one-year deadline. *Id*. at 43. The amended motion raised three new ineffective assistance of counsel claims based on different alleged counsel errors. *Id*. The district court determined that the amended motion did not relate back to the original motion, and the Eleventh Circuit agreed. The Circuit found that the petitioner's three new ineffective assistance claims "did not arise from the same set of facts as his original claims, but arose from separate conduct and occurrences in both time and type." *Id*. at 1346. Accordingly, the three new claims were time-barred. *Id*.

Upon careful examination, the Court finds that the Second Addendum relates back *in part*. The Court finds that Walker's broad assertions in his Second Addendum concerning his alleged actual innocence relate back to his original motion and will be considered by the Court in evaluating his actual innocence claim. (*See* Doc. 2227 at 3 of 8). The Court also finds that Walker's argument regarding his counsel's failure to move to suppress a particular recorded phone call elaborates on his earlier argument that his counsel failed to hold the government to adversarial testing. However, Walker's assertion that his counsel misled him regarding the amount of drugs

3

to which he would be pleading arises from different conduct and, thus, does not relate back.[1] Walker's argument concerning prosecutorial misconduct is clearly a brand-new claim and, thus, also does not relate back.

Lastly, on September 25, 2017, Walker filed a Motion for Leave to File an Amended Petition (Doc. 2249). In this Motion, Walker requests again that the Court consider Amendment 794 in evaluating his claim for a § 3B1.2 "minor role" reduction in his sentence. (*Id*. at 1). Because Walker made this argument regarding Amendment 794 in his First Addendum—and because the one-year limitation period had expired when Walker filed this motion—the Motion for Leave to File an Amended Petition (Doc. 2249) is denied.

## II. Analysis

The Court construes Walker's arguments liberally. *See United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009); *United States v. Weeks*, 653 F.3d 1188, 1200 n.7 (10th Cir. 2011). "If a district court can 'reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so.'" *United States v. Guerrero*, 488 F.3d 1313, 1316 (10th Cir. 2007) (quoting *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999)). However, it is not the district court's role to serve as the petitioner's advocate. *Pinson*, 584 F.3d at 975. The relaxed standard for pro se petitioners "neither requires the trial court, nor the appellate court, to dig through the record, like a hound to a truffle, in search of a claim." *Guerrero*, 488 F.3d at 1316. With the foregoing in mind, the Court will now address each of Walker's claims in turn.

---

[1] The Court notes it specifically asked Walker during his plea colloquy if the quantity of marijuana that he was involved in with this drug conspiracy was "at least 100 kilograms." Walker responded affirmatively. (Doc. 1445 at 25-26).

4

## A. Ineffective Assistance of Counsel Claims

"The right to counsel is a fundamental right of criminal defendants; it assures the fairness, and thus the legitimacy, of our adversary process." *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986). "The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Id.* Under the two-part *Strickland* test, a defendant asserting ineffective assistance of counsel must first show "that counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). "Under the first *Strickland* prong, performance, 'the standard for judging counsel's representation is a most deferential one' under which "[t]he question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom.'" *Ellis v. Raemisch*, 872 F.3d 1064, 1083 (10th Cir. 2017) (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011)). The second *Strickland* prong requires the defendant to show prejudice—specifically, that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

### 1. Discovery

Walker first alleges that his counsel was ineffective in regard to discovery. He asserts that he asked his counsel to retrieve "certain phone recordings that the government alleged it had that wou[l]d show this Petitioner's involvement" and that his counsel "never provided these recordings to Petitioner, nor did he retrieve them from the AUSA." (Doc. 2017 at 2).[2] Walker also complains

---

[2] Walker refers to the phone recordings in question as TT #8, TT #00608, and TT #00632. (Doc. 2017 at 2).

that his counsel failed to produce the recordings he requested of all the phone calls between two other co-conspirators. (*Id.*).

The Supreme Court has held that "where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Court records in this case suggest that Walker's counsel, Neal B. Kirkpatrick, along with all of the other co-defendants' counsel, received tens of thousands of pages of discovery from the government. (*See* Doc. 1020 at 1). Moreover, Mr. Kirkpatrick has provided an affidavit in which he avers that he discussed with Walker, over the course of over twenty meetings, "the nature and extent of the evidence the government was prepared to present in their case against him." (Doc. 2277-1 at ¶¶ 2, 4). Mr. Kirkpatrick further avers that he "reviewed memoranda describing those calls, as well as transcripts of certain of them" in preparing to meet with Walker. (*Id.* at ¶ 3). According to Mr. Kirkpatrick, the two discussed certain calls that Walker "initially asserted would prove his innocence" but that, in Mr. Kirkpatrick's opinion, were not favorable to him. (*Id.* at ¶ 4). Mr. Kirkpatrick ultimately felt that none of the calls were favorable to Walker and that the evidence against him "would have been more than sufficient for a jury to find him guilty of conspiracy." (*Id.* at ¶ 5).

The record supports Mr. Kirkpatrick's contention that the phone recordings would not have exonerated Walker. During his plea colloquy, Walker expressed no objection to the prosecutor's detailed explanation of the evidence, primarily phone calls, implicating him in the drug conspiracy (Doc. 22-24); in fact, Walker confirmed that he spoke with a co-conspirator "multiple times on the telephone and in person" and "discussed transactions and arrangements for the sale of drugs,

6

mostly marijuana." (*Id*. at 25). "[T]he 'truth and accuracy' of a defendant's statements during the Rule 11 proceeding 'should be regarded as conclusive in the absence of a believable, valid reason justifying a departure from the apparent truth of his Rule 11 statements.'" *Weeks*, 653 F.3d at 1205 (quoting *Hedman v. United States*, 527 F.2d 20, 22 (10th Cir. 1975)). The Court finds no reason to justify disregarding Walker's Rule 11 statements.

The Court also notes that Walker made a similar contention regarding the phone call evidence against him in his Objections to the Presentence Investigation Report (PSR) (Doc. 1532). He argued that two of the phone calls between himself and another co-conspirator "did not, in fact deal with marijuana" and, instead, concerned "an orange Dodge Charger automobile which both [of them] had seen." (*Id*. at 2). The Court overruled this objection. (Doc. 1673 at 16-17). According to the Addendum to the PSR, "neither transcript lists a Dodge Charger nor their observations of seeing any vehicle." (PSR Addendum at 2). Instead, it is clear from the portion of the transcript provided in the Addendum to the PSR that these phone calls are far from favorable to Walker.[3]

For the foregoing reasons, the Court finds that Walker has failed to show that his trial counsel's performance "fell below an objective standard of reasonableness" in regard to discovery.

---

[3] The Addendum to the PSR provides, in relevant part:

> In the telephone call dated April 8, 2014, Walker stated, "…yeah, I talked to him. Yeah I'm upset with him… gonna spook like a mother****." Heron replied, "…I was like, man, you know hey, man, you gonna get a slap on the wrist." Further into the conversation Walker stated, "…how you gonna f*** with somebody…you don't even know" and "…and he was carrying a pistol…if you gotta carry a pistol, you don't need to f*** with 'em." Ramirez then asked Walker, "You sent someone to go pick up the, the shoes?" Walker replied, "Uh, yeah I will… I'm headed down there." Ramirez further stated, "…he said he would give the key if you can go grab it."

7

*See Strickland*, 466 U.S. at 688. Thus, the Court concludes that this claim of ineffective assistance of counsel has no merit.

2. **Adversarial Testing**

Walker's second claim of ineffective assistance of counsel centers around his argument that his counsel "was ineffective for not holding the government to adversarial testing concerning the evidence it presumed to have against [him]." (Doc. 2016 at 5). Relatedly, he asserts that his counsel erred in failing to move to suppress a certain, unidentified phone call recording. (Doc. 2227 at 3-4 of 8). He argues that the recording "does not identify Walker as a participant in the call" and "indicate[s] nothing about Walker's intent to buy, sell, or deliver narcotics." (*Id*. at 3 of 8). He also suggests that his counsel should have challenged "the validity of the wiretap authorization." (*Id*. at 4 of 8).

During the plea colloquy, the Court asked specific questions to ensure that Walker's trial counsel had considered all of his possible defenses to Walker's satisfaction:

> COURT: Mr. Walker, are you satisfied with the representation your lawyer has provided?
> DEFENDANT: Yes, Your Honor.
> COURT: And do you believe that he has fully considered any defense you may have to the charge?
> DEFENDANT: Yes, Your Honor.
> COURT: Do you believe he has fully advised you concerning this matter?
> DEFENDANT: Yes, Your Honor.

(Doc. 1445 at 21). The Court finds no valid reason to question the truth of these statements. *See Weeks*, 653 F.3d at 1205.

Even assuming that the one recorded phone call to which Walker refers was excludable, the Court finds that Walker has failed to show prejudice. Walker affirmed the prosecutor's assertion during the plea colloquy that there was "a *series* of phone calls that were intercepted by law enforcement where Mr. Walker discussed with a member of the conspiracy a drug debt owed"

and "discussed with a member of the conspiracy upcoming drug deals." (Doc. 1445 at 22) (emphasis added). Moreover, Mr. Kirkpatrick asserts that "the evidence against [Walker], which would have included far more than the telephone calls to which he refers, would have been more than sufficient for a jury to find him guilty of conspiracy." (Doc. 2277-1 at ¶ 5). Accordingly, the Court finds this claim to be without merit.

### 3. "No actual evidence"

Walker also alleges that his counsel "allowed [him] to enter into a plea based on no actual evidence presumably or otherwise." (Doc. 2017 at 2). Relatedly, he argues that his counsel "fail[ed] to research the admission of no possible evidence against Mr. Walker as mentioned in the PSR." (Doc. 2017 at 4).

The Court finds no merit in these arguments, as they are clearly based on a misinterpretation of one sentence in the PSR. Paragraph 16 of the PSR provides in part:

> [Co-conspirator] and Walker received the majority of their marijuana at their respective businesses. . . . No evidence exists as to the amount of marijuana Walker received for distribution purposes. Walker also received an unknown amount of marijuana at his residence . . . .

Nothing in this paragraph—or in the PSR more generally—can reasonably be interpreted to mean that there was no evidence tying Walker to the drug conspiracy. In fact, just a few paragraphs down, the PSR states that "it is conservatively estimated that Walker possessed with intent to distribute and/or distributed at least 272.16 kilograms of marijuana." (PSR at ¶ 18). The PSR also specifically references phone conversations between Walker and his marijuana supplier on March 27, April 8, and April 9, 2014, which show Walker acting as a middle man in the marijuana portion of the conspiracy. (PSR at ¶¶ 15, 17). Because these claims of ineffective assistance of counsel are based on a misinterpretation of the PSR, and there is no real question of whether there was

9

evidence supporting the drugs conspiracy charge against Walker, the Court finds these claims meritless.

B. **Minor Role Reduction**

Apart from his ineffective assistance claims, Walker argues that the Court should have applied a minor role reduction to his sentence. (Doc. 2044). At sentencing, this Court dismissed Walker's contention that he should be considered either a minor or minimal participant pursuant to United States Sentencing Guidelines § 3B1.2:

> While [Walker] may not have been an official target of the FBI or Tulsa Police Department, the defendant played a bigger role than a large portion of the indicted co-conspirators, many of whom pled guilty to single communication facility counts and were involved in user quantities of various drugs or, at the most, were street-level distributors and deserving of role reductions.
>
> The defendant, on the other hand, was involved with . . . distributable quantities of marijuana, was entrusted enough by the main supplier of cocaine and marijuana for the conspiracy, Heron Ramirez, to retrieve fronted marijuana for lack of payment, and was in direct communication with the supplier. Even the defendant contends that he had conversations with Ramirez concerning the debts of others to whom Ramirez had fronted drugs.

(Doc. 1673 at 18-19). Walker now objects to the Court's refusal to apply this reduction and argues that the non-exhaustive list of factors added to § 3B1.2 by Amendment 794—which were already in effect at his sentencing—supports applying the reduction to his sentence. (Doc. 2044 at 3).

As part of his plea agreement with the United States, Walker waived his right to directly appeal the conviction and sentence, except to appeal from a sentence which exceeds the statutory maximum. (Doc. 1335 at 3). He also waived his right to collaterally attack his conviction and sentence pursuant to 28 U.S.C. § 2255, except for claims of ineffective assistance of counsel. (*Id.*). The Court finds that Walker's claim regarding a minor role reduction falls within the scope of the § 2255 waiver and that the waiver should be enforced.

"Provisions in plea agreements waiving the right to appeal and collaterally attack a conviction and sentence are enforceable if (1) the disputed issue falls within the scope of the waiver, (2) the defendant knowingly and voluntarily waived his rights, and (3) the waiver will not result in a miscarriage of justice." *United States v. Raifsnider*, 252 F. App'x 866, 867 (10th Cir. 2007); *see also United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc) (per curiam).

In determining the scope of a defendant's waiver, "the text of the plea agreement is our guide." *United States v. Anderson*, 374 F.3d 955, 957 (10th Cir. 2004). The Court must construe any ambiguities in these agreements against the Government. *Id*. Here, the language of Walker's plea agreement is clear:

> The defendant waives the right to collaterally attack the conviction and sentence pursuant to 28 U.S.C. § 2255, except for claims of ineffective assistance of counsel.

(Doc. 1335 at 3). There is no basis for characterizing this § 3B1.2 claim as a claim of ineffective assistance of counsel because the addendum filed by Walker that relates to this claim does not refer to any alleged ineffectiveness on the part of Walker's counsel. (*See* Doc. 2044). As a result, based on the plain language of the plea agreement provision, the § 2B1.2 claim clearly fits within the scope of the waiver.

The Court also finds that Walker's waiver was knowing and voluntarily. In making this determination, the Court looks primarily at two factors. *See United States v. Smith*, 500 F.3d 1206, 1210 (10th Cir. 2007). First, the Court examines "whether the language of the plea agreement states that the defendant entered the plea agreement knowingly and voluntarily." *Id*. at 1210-11 (quoting *Hahn*, 359 F.3d at 1324). The Court also "look[s] for an adequate Federal Rule of Criminal Procedure 11 colloquy." *Id*. at 1211 (quoting *Hahn*, 359 F.3d at 1325).

Here, Walker's plea agreement states multiple times that Walker is entering into the agreement knowingly and voluntarily. (*See* Doc. 1335 at 3, 16). In particular, Walker signed his name under a paragraph stating, in relevant part, "I have read this agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it." (*Id*. at 16). The plea agreement also states that "[t]he defendant expressly acknowledges that counsel has explained his appellate and post-conviction rights; that defendant understands his rights; and that defendant knowingly and voluntarily waives those rights as set forth above." (*Id*. at 3). Furthermore, the undersigned engaged in a thorough Rule 11 colloquy that included the undersigned reading over Walker's waiver of appellate and post-conviction rights and asking Walker specific questions regarding his understanding of the waiver:

> COURT: Did you visit with Mr. Kirkpatrick about this waiver before you signed it?
> DEFENDANT: Yes, Your Honor.
> COURT: And do you feel that you understand it?
> DEFENDANT: Yes, Your Honor.
> COURT: Do you understand that by entering into this plea agreement and entering a plea of guilty, you will have given up or limited your right to appeal your conviction and your right to appeal or collaterally attack all or part of your sentence pursuant to the terms that we've just discussed?
> DEFENDANT: Yes, Your Honor.

(Doc. 1445 at 19-20). In light of the language of Walker's plea agreement and the content of the Rule 11 colloquy at Walker's change of plea hearing, the Court is satisfied that Walker's waiver was both knowing and voluntary.

Lastly, the Court does not find that enforcing the waiver would result in a miscarriage of justice. The Tenth Circuit has held that enforcing a waiver only results in a miscarriage of justice in four situations: "[1] where the district court relied on an impermissible factor such as race, [2] where the ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver

12

is otherwise unlawful." *Anderson*, 374 F.3d at 959 (quoting *Hahn*, 359 F.3d at 1327). To meet the fourth factor, the waiver must suffer from error that seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id*.

"The defendant bears the burden of demonstrating that the waiver results in a miscarriage of justice," *Anderson*, 374 F.3d at 959, and Walker has made no attempt to show that the waiver should not be enforced.[4] Furthermore, the Court finds no evidence that any of the aforementioned situations is present in this case.

The Court observes that Walker's plea agreement stated the appropriate statutory maximum sentence (Doc. 1335 at 10), informed Walker that he was giving up multiple constitutional and appellate rights (*id*. at 2-3), and implied that the Court would take into account the Sentencing Guidelines (*id*. at 11). *See United States v. Maldonado*, 410 F.3d 1231, 1234 (10th Cir. 2005) (identifying factors for considering whether enforcement of a waiver is "otherwise unlawful"). The undersigned also brought up these issues in the Rule 11 colloquy, asking if Walker understood that he was waiving certain rights (Doc. 1445 at 6-8, 19-20), if he understood that the maximum sentence was 40 years (*id*. at 10-11), and if he understood that the Court would consult, but was not required to follow, the Sentencing Guidelines in determining his sentence (*id*. at 14-15). The Court also notes that Walker received a sentence of 85 months in prison, which is significantly less than the statutory maximum of 40 years. This sentence clearly complies with the terms of the plea agreement and the understanding expressed by Walker during the plea colloquy.

---

[4] As noted above, Walker claims that his counsel "erroneously advocated for a waiver of Fifth Amendment privilege" based on what he believes to be insufficient evidence. (Doc. 2227 at 3 of 8). The Court distinguishes this statement from any suggestion that counsel provided ineffective assistance in connection with the negotiation of Defendant's waiver of his appellate and collateral-review rights.

13

*See Maldonado*, 410 F.3d at 1234. As these reasons, the Court finds that Walker's § 3B1.2 claim is barred by the express collateral-attack waiver in his plea agreement.

C. **Actual Innocence**

Walker asserts that he "exert[ed] his innocence" to his attorney while awaiting trial and that "Act[u]al Innocence as well as Legal Innocence must prevail due to counsel's [a]bandonment." (Doc. 2017 at 5). He further states that, "[w]hile [he] has entered a plea of guilt[y] to a charge of conspiracy, given the ab[s]ence of evidence, this plea affords no conclusion that [he] engaged in com[m]unication about narcotics or aided and abetted any conspiracy. Walker is actually innocent of the crime." (Doc. 2227 at 3 of 8).

The Court finds that Walker's claim of actual innocence is also barred by his collateral-attack waiver. First, the Court finds that Walker's actual-innocence claim fits within the scope of the waiver. Also, as discussed above, the Court finds that Walker entered into the waiver intelligently and voluntarily. Lastly, the Court finds that enforcing the waiver as to this claim would not be a miscarriage of justice. The Tenth Circuit "has yet to hold that an actual-innocence exception exists under the miscarriage-of-justice rubric in the context of an express waiver of review in a plea agreement." *United States v. Miles*, 546 F. App'x 730, 733 n. 1 (10th Cir. 2012) (unpublished).

In any event, Walker's actual-innocence claim fails on the merits. *See United States v. Miles*, 553 F. App'x 846, 848 (10th Cir. 2014) (explaining that the petitioner's actual-innocence claim could not constitute an exception to the collateral-attack waiver because it "clearly failed on the merits").

First, the Court notes that actual innocence "means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). Walker seems to argue that

14

he is "actually innocent" because of the "ab[s]ence of evidence." (Doc. 2227 at 3 of 8). This suggests a misunderstanding of what it means to be actually innocent.

Furthermore, in order to establish actual innocence, the petition "must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623 (internal quotation marks omitted). "Actual innocence claims focus on 'new' evidence—'relevant evidence that was either excluded or unavailable at trial.'" *Johnson v. Medina*, 547 F. App'x 880, 885 (10th Cir. 2013) (no abuse of discretion in denying an evidentiary hearing when actual-innocence claim was based on evidence in existence before petitioner pleaded guilty).

Here, Walker provides no new evidence; he only suggests that "given the ab[s]ence of evidence, this [guilty] plea affords no conclusion that Walker engaged in communication about narcotics or aided and abetted any conspiracy." (Doc. 2227 at 3 of 8). However, Walker provides no reason to disregard his sworn statements during the change of plea hearing, including his admission that he spoke with a member of the drug conspiracy "multiple times on the telephone and in person" and "discussed transactions and arrangements for the sale of drugs, mostly marijuana." He contends only that "the District Court could not accept Walker's plea as a true statement because there was no conspiracy shown." (Doc. 2227 at 6 of 8). On the contrary, the government stated that it was prepared to prove at trial facts that were consistent with the conspiracy charge, including that Walker was involved in "a series of phone calls relative to the distribution of controlled substances" and that Walker planned to recover a stash of marijuana from a buyer who owed a debt to a member of the conspiracy. (Doc. 1445 at 22-23). The Addendum to the PSR also detailed how the probation officer relied on corroborated statements to determine

Walker's involvement with the conspiracy. (Addendum at 2). In light of these sworn statements and the government's evidence in this case, the Court finds no colorable claim of actual innocence.

"Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of act and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). The Court finds that a hearing is not necessary in this case because the record conclusively establishes that Walker is not entitled to relief. Mr. Walker's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. 2016) is hereby **denied**, and his Motion to for Leave to File an Amended Petition (Doc. 2249) is also **denied**.

**ORDERED** on this 2nd day of March, 2018.

_____
JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE